Our next case for argument is 24-2119, Google v. Sonos. Mr. Tucker, please proceed. Poised in one piece, Mr. Tucker. A lucky week, huh? It's good to be back, Your Honor. Thank you. And may it please the Court, Dan Tucker on behalf of Google. No evidence supports the Board's finding that Rosenberger discloses exchanging its weighted signals in the low-power listening mode. Not Rosenberger, and not Dr. Johnson's testimony. Appendix 40 shows the clearest example of where the Board got its anticipation analysis wrong. The Board relied on Column 8, isn't that right? Correct, Your Honor. The Board relied on Column 8 of Rosenberger. Why was it wrong? Because Column 8 never discloses exchanging weighted signals at all, let alone doing it in low-power mode. Instead, Column 8 expressly points to other parts of Rosenberger. It says, see device coordination discussion below. But in those device coordination methods, which are shown in connection with Figures 4 through 6 of Rosenberger, Rosenberger's device always exits its low-power mode before exchanging the weighted signals. Is it fair to say the Board understood when Column 8 was talking about how there's a change in the status light that maybe that was an indication of it being triggered? I don't think the Board was entirely clear on that point. I do think it interpreted the phrase wake up to indicate exiting a low-power mode in Rosenberger. And there are numerous problems with that analysis. The first is that this wake up phrase does not relate to the device coordination at all. In Column 8 of Rosenberger, there are three different alternatives for getting the device to interact with the user. The first is you receive a trigger phrase, and you do device coordination. Well, I think what you just said is there's three different ways we could interpret what is being meant by wake up in Column 8. But the Board interpreted it as exiting low-power mode and becoming active and engaged. How is that not supported by substantial evidence? Why can't I look at this expression and say, okay, that's a fair reading by the Board? Yes, it could have meant other things, but their conclusion that in this instance it meant exiting low-power mode, waking up, doesn't seem clearly erroneous to me. I realize substantial evidence is the standard, but I'm saying it doesn't seem like a crazy outcome by the Board. There's no other way to read Column 8 of Rosenberger except to divide those into alternatives. They're separated by the word or. If we go to Column 8 of Rosenberger, they're separated by the word or. So the first option is receive and recognize a speech trigger phrase and determine that it is in a better position to handle subsequent interaction. It continues to Column 24, or when the user presses the push-to-talk button, or in the event that the device is instructed to wake up. Those are three different alternatives. The wake up does not entail the device coordination methods. SONOS needs the device coordination methods in order to get the messages that are being transmitted in low-power mode in the claims. But after all three of those things, it changes its status light. Correct. The point I was getting back to, right? Sure. So why isn't it fair for the Board to not read them disjunctively despite the or because those three things change the status light? Because Rosenberger does not disclose that that status light is to indicate transitioning out of its low-power listening mode. Instead, it expressly says that the status light is, this is on line 30, to prompt the user to say one of the speech commands. It is not to indicate exiting the low-power mode. So it changes its status light or plays a pre-recorded message to prompt the user to say one of the words. So are you saying to me you think the change in the status light is what prompts the user to say one of the words? I thought the pre-recorded message was what prompted the user to say one of the words, and I assumed, I understood the Board to be saying the change in status light is the signal that's coming out of low-power mode. So I do think that's implied in the Board's analysis, and I think that's wrong if you read this sentence. It gives the three alternatives that we talked about, and then it says the device beeps, changes its status light, or plays a pre-recorded or synthesized audio message through a speaker to prompt the user to say one or more speech commands. All three of those are different options to prompt the user to say one or more speech commands. And all three of those change the status light? Any of those three would change the status light? I just want to make sure I understand your question. Any of the three... You're saying I should read the first three things as alternatives. Yes. That wake up is not tethered to receiving and recognizing speech trigger phrase, correct? That's correct. So if any of those three are alternatives, any of those three then result in changing of the status light, correct? That's correct. I'm just trying to understand your construction. Does Columate disclose exchanging waiting signals? It does not at all. The only time Columate makes any fair reference to waited signal exchange is in this parenthetical on line 24 where it says, see device coordination discussion below. And that is the main point of our argument, is that they are relying on a strict anticipation theory. Columate itself does not disclose it. Instead, it points you to later embodiments. It says, see device coordination discussion below. And when you go to those other embodiments, there are four of them described in Figures 4, 5A, and 6. Every single one of them discloses that the device exits the low power listening mode, which is what the board read on the claimed low power mode, before device coordination. And so even if we take Sonos' theory that you have to mix and match embodiments, it still fails because even the disclosures with regard to Figures 4 through 6 do not disclose exchanging messages in the low power mode. What is determining that it is in a better position to handle subsequent user interaction? Isn't that a waiting signal? So, yes, Your Honor. I agree that this is all in that first option, determining that it's in a better position to handle subsequent user interaction than any other device that simultaneously recognized the same speech trigger phrase, see device coordination discussion below. That whole phrase is discussing the coordination methods. Nothing in there expressly talks about exchanging messages or exchanging waited signals. In order to get that disclosure, which is part of the claims, you have to go to the other parts of Rosenberger. And even Sonos' expert did that in his analysis. He pointed multiple times to the coordination methods in Rosenberger's disclosure. So what is it you understand in this sentence is causing the wake-up? And do you believe the wake-up does correspond to exiting low power mode? I'll answer the second question first. No, in Rosenberger, I do not believe that waking up corresponds to exiting the low power mode. Okay, well then I'm going to ask you what, if anything, in this specification should lead me to understand that. Sure. There are three times that Rosenberger uses the word wake-up. One in the part that we're talking about, which is 826 through 32. So just our position is it's not low power mode, exiting low power mode. It is describing the beginning of interaction with the user. And in all three of the instances where Rosenberger discusses wake-up, it all uses it synonymously with interacting with the user. At 8, the column 8, the one that we're talking about now, wake up and expect a subsequent speech command. Column 10, lines 31 through 33, wake up, interact with person P1. The only other one is in column 2, lines 6 through 9, which is describing background prior art. I'm sorry, what's the last one? The last one that I just started on is column 2, lines 6 through 9. It's discussing background prior art, but it also says wakes up and prompts the user to say one or more commands. He says when a trigger phrase is detected, the system wakes up. Doesn't that mean exit low power mode? So again, this is discussing prior art that is not related to the patent, or is not the patent. It's discussing the Zigbee prior art. And in that prior art, because I will certainly look at it, in that prior art, does wake up correspond to exiting low power mode? I can't remember, to be honest with you, Your Honor. Okay, but suppose it does. Suppose it does. I'm going to play a worst case scenario with you. Suppose in the Zigbee reference, it's pretty clear to all of us that when the system, you know, air quotes, wakes up, it's exiting low power mode. Then wouldn't I have, in this disclosure, one use of the word wake up that corresponds to low power mode? And whether ultimately you're right or wrong in my eyes about how column 8 should be interpreted, I have to give deference because the question is that. Yeah, I mean, the board never made that finding. And so I think if we look at the record as a whole, the board, to my recollection, never made that finding below. And so I think the courts could still reverse on this determination. Well, that would be remand now. Or remand, sorry. All right, there was a second part to my question, which I think that we skipped over because you said there were three places, so I wanted to know the three places. The second part was, what do you understand in column 8 is the wake up? That implies an action, right? Yes. Like, so what is the action? What does it mean to the system to wake up? You interact with the user. You what? You interact with the user. You begin the user interaction, prompt the user to say one or more speech commands. So when column 8 says, determining that it is in a better position to handle subsequent user interaction, is that? That's describing the coordination process in figures 4 through 6. That is a precursor to a precursor to waking up. So in the device coordination discussion, the way that Rosenberger works is the device receives a trigger phrase. It is triggered, according to Rosenberger, which Rosenberger says trigger, i.e. switch from a low power mode to an active mode. Then it does the coordination, which is what's important for them to read on the claims. It exchanges the messages. It's doing all of that in active mode. Then it determines which one is in a better place. That's to handle the subsequent user interaction. That's what column 8 is talking about. Then, only then, does the device wake up. That is the way to read column 8, taking into account all of the words, all of the alternatives, the commas, and the structure of that paragraph. What's the impact of the instruction in column 8, up around line 24, that says see device coordination discussion below? Doesn't that get a broader description than what you're referring to? The only device coordination discussion below are the four embodiments that Rosenberger describes in figures 4 through 6. Again, it's like a chicken and an egg problem. In order to get anticipation, Sonos needs to show the exchange of these messages. To show the exchange of these messages, it has to point to some of these coordination controller methods. But the problem is, in all four of them, the device always gets triggered, which means, in Rosenberger, it exits the low power mode. It gets triggered and exits the low power mode before coordination begins, before the message exchange. Okay, why don't we take some of your time for rebuttal. Thank you. Mr. Madhouse, please proceed. May it please the court. The substantial evidence standard compels affirmance. The board reasonably found that column 8 of Rosenberger discloses its own embodiment, where the devices remain in a self-described low power mode while exchanging coordination signals, and exit that mode only after determining which device should respond. And that's evidenced by the winning device changing its status light, beeping or playing a message, to indicate waking up to a more power-intensive mode. Now, there's no obviousness or kind of mental type theory here. Both parties agree that the cross-reference C coordination discussion below incorporates the later discussion. And the only question is the scope of that incorporation. And the board reasonably found the incorporation to just be about how to determine which device should respond, not the timing of when the device exits its low power mode. And that is a reasonable reading of column 8. If you look at column 8, and this is reflected most clearly, I think, in the board's decision at appendix 25, but also appendix 94. If you look at column 8, the board parsed it reasonably to disclose three steps. Starting in a low power mode, a self-described low power mode, which is undisputedly satisfies the claimed low power mode. The second step is these exit methods. And the one that's relevant here is hearing a trigger phrase and determining that that device is in the best position to respond. So it requires both, hearing the trigger phrase and determining. And then and only then does it get to the third step of exiting, which is the device beeping, changing its status light, playing a prerecorded message to indicate waking up. Now, a few points on this waking up issue, which is sort of, there's questions about that. First, I point this port to just before the paragraph in column 8, lines 14 to 16. Rosenberger explains that the status light is for visually indicating various device states and modes. So it's clearly, it's not, it's just stating that it changes status, that it indicates a change in status, just like you would expect something called a status light to indicate. And so the board reasonably read this. You're starting at low power mode, self-described, and then there's a change in the status light. A reasonable reading of that is that's the exit of low power mode. Why? How does the change, where in effect does changing the status light trigger exiting low power mode? Well, so in lines 14 to 16, it explains that the status light is for visually indicating various device states and modes. The next sentence is explaining the relevance mode that the device starts in. It's the self-described low power mode. And then at the very end of the third step, which is lines 28 to 33, when it's indicating changing its status light, a reasonable reading of that is, okay, you started in low power mode, and then at the end of this process, after hearing the trigger phrase and determining you're in the best place to respond, you're changing the status light because you're exiting that mode. That is a reasonable interpretation of this disclosure. There was a suggestion from Google that waking up refers only to responding to the user, but there's no need to read waking up as somehow mutually exclusive. It can only refer to responding to the user and can't also indicate exiting the low power mode at the same time. And that's precisely how the board read the passage. And that makes sense. When we're looking at step two, the different ways to determine which device should respond, there's three ways. There's hearing the trigger phrase and making the coordination exchange. There's pressing a button. And there's also getting the system controller to send a message instructing you to wake up. Well, those are all treated equivalently. Even if they are disjunctive, it's all equivalent to doing the same thing. And so waking up refers to a device that has started in a low power status mode and then wakes up and exits it by the change in the status light. And I would also point out something that Google's own theory of its own patent is using the same usage of wake up. If you look at Appendix 19, Note 10, the board explains how the ITC has found these claims indefinite for the usage of low power mode. And the board also notes that the way that Google defended its support for that claim is its patent's reference to waking up. Waking up is supposed to refer to exiting the low power mode and also interacting with the user. This is clear from their brief at 2 and 6 to 7 of their opening brief. They explain this waking up, sleeping terminology in their patent and how they're mapping it on to exiting the low power mode. And can I just ask a housekeeping question? If we were to disagree that the board's fact findings are supported by substantial evidence here, is it your position that that would still require us to remand because the board did not address your alternative theory that Rosenberger discloses another low power mode different from the self-described low power listening mode? We think this court should affirm on that alternative ground. I have that. That was why I started the question with if I were to find there was no substantial evidence. No, I understand. If you were to disagree with the board's reasoning and its finding on column 8, we think on our alternative ground you should still affirm even though the board didn't reach it is the point I'm trying to make because as a matter of law, the evidence only permits that conclusion. At the bare minimum, you need to remand. But I'm saying more aggressively you should affirm as we've explained in our response brief. We don't make fact findings. I understand, Your Honor, but the point is you do determine that certain things can only be decided one way as a matter of law. When you reverse, for example, when you reverse a tribunal below, sometimes you determine that the evidence is so one-sided that the court or agency below could not have reached the contrary determination. I agree, Judge Reina. Should we remand in order for the board to reach that issue? I think, again, at the bare minimum you should remand. If you disagree with me that you can find as a matter of law, certainly remand. But I'm pressing that you should affirm and if I can just explain why that is the case. The only evidence on this is evidence that the devices remain in the claimed low power mode even if they exit upon this self-described power mode upon doing the coronation exchange process. Our expert testified at 806 paragraph 93, a PECIDA would have readily understood from Rosenberger's disclosure that an operating mode in which Rosenberger's control device does not interact with the user and process voice commands would require a lower amount of power than an operating mode in which Rosenberger's control device does interact with the user and process voice commands. That is the only beyond what's in Rosenberger itself which supports that testimony. They have submitted no evidence otherwise that it does not operate in a lower power. And that's for a good reason. As I just mentioned, in the ITC they're trying to defend their waking up disclosure as exiting a low power mode. So they do exactly what Rosenberger's saying here about responding to a user based on winning a coronation method. And so that's what they map exiting the low power mode to. So they could hardly say otherwise. So they actually haven't put any evidence in rebutting our expert. And it makes sense intuitively looking at Rosenberger. Once you win device coronation, you send a control signal. You start responding to the user, doing all sorts of things in response to the user to carry out its commands. You beep, you change the status light. We talked about column 8. What does column 11 contribute to the issue here? So what column 11 contributes is that it shows the mechanism by which the determination is made of which device is meant to respond. It's the signal exchange processes, exchange of weighted signals. And the board read column 11, the cross reference of C device coronation discussion in column 8, to refer to column 11's processes, exchanging signals, but not import its use of the word trigger, which is eminently reasonable because column 8 makes its own use of the word trigger. It talks about triggering before it even gets to this cross reference. Then it talks about determining, and with regard to determining, it makes the cross reference. And so that, I think it was argued on the other side, that column 8 doesn't disclose exchange of coronation signals. It does, as the board read it. It does because it's incorporating that aspect of column 11. And if I can just get back to this alternative ground. I mean the claim construction here that controls is an operating mode or state in which power is conserved, not the lowest power mode, not the only operating mode or state in which power is conserved. So it doesn't matter if Rosenberger's listening mode is a low power state. There's at least another low power state, which is during coronation the device is not interacting with the user. And that's clearly a motor state. Why do we know it's a motor state? Because at column 8, lines 14 to 16, we've talked about how the LED status light indicates various device modes or states. And we know that when it wakes up, it's changing a state. So we have all the pieces here. We've got low power based on our evidence. They've submitted no rebuttal evidence on that. The only thing they've said is that our expert's testimony is conclusory. It's not conclusory. He's testifying from his perspective as a skilled artisan, and it's corroborated by Rosenberger itself and how Google's litigated its own indefinite defense in the ITC. So how many pieces are you relying on, four? For which part? It seems to me if one of them doesn't fall in your favor, there's no anticipation. I want to make sure I'm responding precisely. So as to the substantial evidence finding that the board made, the board's finding, we're just relying on their reading of column 8. But as to this independent ground of affirmance, we are relying on our expert's testimony and Rosenberger corroborating it. I mean, I think either one is sufficient, but it all shows that the evidence is one-sided on that. They have nothing on the other side. So I'm happy to discuss either ground further if there are questions, but otherwise we would ask for this board to affirm for either or both reasons. Okay. Thank you, Mr. Begg. I mean, thank you, Mr. Kleinhoff. I think we can move on. Thank you, Your Honors. I hope to address two points quickly. One is the housekeeping issue of what to do on the alternative grounds. We think that the court would have to remand. There are disputes of fact. First of all, the board did not reach the alternative theory in the first place. Second of all, there are several disputed facts. We argued below that Rosenberger only discloses a single low-power mode. The board suggested even during the oral hearing that it agreed with our argument. We also refuted the position that other low-power modes exist simply because Rosenberger's device beeps and lights up. We also, at Appendix 599, took on Sonos's argument that Rosenberger conserves power during the coordination as being unsupported by the record. So there are factual disputes that I think would preclude affirmance on that alternative ground. The other point that I wanted to get to, unless the court has other questions, is just the discussion that my colleague had with Judge Lori about the import of Column 11. I believe Mr. Manos said that Column 11 is important because it's the mechanism for exchanging signals. That's the whole point. We agree. That is the mechanism for changing signals in Rosenberger. It's Rosenberger's only disclosure of exchanging the weighted signals, and they need that part to read on the claims. Now here's what Sonos is trying to do. They're taking the weighted signal exchange from that part of Column 11 and saying, ignore the part about triggering. Ignore the part that in every single one of those instances Rosenberger's device is triggered and in the low-power mode. Instead, go to this other part of what they say is a separate embodiment and combine that part. That is not anticipation. That is obviousness. And Sonos is trying to defend the board's theory here with obviousness, not the anticipation ground that it presented in its petition. Thank you.